## SINGLE and others vs. BARNARD.

*Replevin, special property in plaintiff—Estoppel—Attachment.*

1. Complaint in replevin for lumber, alleged that plaintiffs were owners and entitled to the possession. Answer, a general denial, and that defendant (as sheriff), levied on the property by virtue of an execution against P. Verdict, that defendant had a special property in the lumber to the amount of the execution (stating it), and was entitled to the possession, and that plaintiffs had unjustly taken and detained it; and assessing the damages for such taking and detention. Defendant had released the lumber to plaintiffs upon their depositing the amount due on the execution to abide the event of the suit; and plaintiffs had run the lumber to market. *Held,*

(1.) That the only material issues, under the circumstances, were, whether and for what amount defendant had a special property in the lumber, with the right of possession, as against the general owners.

(2.) That the verdict was therefore sufficient, although it did not determine the general ownership nor the value of the property.

2. In a suit of B. against P., to enforce a lumberman's lien, the sheriff having attached certain logs which were claimed by A. S. and B. S., partners, one M. as principal and said A. S. as surety, executed a penal bond to the sheriff, reciting the attachment, and undertaking that M. should saw the logs at his mill without charge to the sheriff or the attachment plaintiff, claiming no lien for such sawing, and should pile the lumber so manufactured and deliver it to the sheriff, "it being understood that the same should not go out of the control of said sheriff, and should be at all times subject to his order, control, custody, and possession, or that of his successor," as the court might order in said action, etc. It was adjudged in the suit of B. against P., that B. had a lien (for labor) on the logs attached, and the sheriff was ordered to sell the same to satisfy the lien and judgment. Meanwhile most of the logs had been made into lumber by M., and the lumber here in suit was seized by the sheriff as the products thereof. *Held,*

(1.) That M. and A. S., were in the position of receiptors to the sheriff for the logs attached, and were bound to return them, or the lumber made from them, to be sold under the order of the court.

(2.) That the *firm* of B. S. & A. S. were bound by the terms of said bond of A. S. & M., and are estopped from denying the correctness of the judgment in the suit of B. against P., which determines that B. had a lien on said property.

(3.) That if M., on manufacturing said logs, did not pile the lumber so that it could be distinguished from other lumber of B. S. & A. S., as required by said bond, the latter firm cannot object to a seizure and sale by the sheriff of sufficient lumber to satisfy the judgment, out of the whole mass thus wrongfully intermixed.

3. An affidavit for an attachment which states definitely the amount of defendant's indebtedness to plaintiff, and that it was for labor and services upon certain logs therein described, and that a petition in writing claiming a lien upon said logs had been "made and filed" within the time required by statute, *held* sufficient to authorize the writ.

4. Defendant's right to the verdict. and judgment affirming his special property and right of possession in the lumber, and awarding him damages, was not affected by his accepting a deposit of money sufficient to satisfy the execution in his hands, and releasing the lumber to plaintiffs. And an instruction that such acceptance and release was "no waiver of his right under the execution levy," was not error.

APPEAL from the Circuit Court for *Marathon* County.

Action of replevin, to recover a large quantity of pine lumber, which the plaintiffs claim as general owners. The defendant justifies as sheriff, claiming the right to hold the property by virtue of an execution against the same, and denies generally the allegations of the complaint.

The proofs showed that the plaintiffs were the general owners, and in possession of a large quantity of pine lumber on the Wisconsin river in August, 1870, when the defendant took possession thereof and held it two days; that the plaintiffs purchased the logs out of which it was made from one McIndoe, not paying full value therefor, they knowing that a lumberman's lien to the amount of some $1,300 was claimed upon part of them, but nothing being said about such lien, and nothing being retained to pay it; that the defendant, as sheriff, in June, 1870, levied an attachment upon the logs so purchased by the plaintiffs of McIndoe, or part of them, in an action by one John Brown against one Daniel McPhail and said McIndoe, to enforce said lumberman's lien, McIndoe being afterward dismissed from such suit; that the logs having come to the dividing boom at McIndoe's mill, and it being necessary to put them through

the mill, he took from McIndoe as principal, and the plaintiff *Stewart* as surety, a bond conditioned that McIndoe should saw the logs without charge to the defendant or Brown, and without any lien for sawing, and pile the lumber separately, and deliver it to the defendant, and that it should be understood at all times to be in the custody and subject to the control of the defendant or his successor in office, and subject to the order of the court in that action; and thereupon the lumber was sawed and piled, but not specially delivered to the defendant; that Brown recovered judgment in said action, and execution issued to defendant, directing him to sell the property attached, and he levied on such lumber by virtue thereof; that the lumber was in rafts mingled with other lumber when he levied on it; that after the coroner had taken it in this action, and he had regained possession by giving counter security, he had consented to let the lumber go to market, upon McIndoe's depositing the amount of the execution, to await the event of the suit.

The bond of McIndoe & *Stewart*, and the judgment roll, lien papers, attachment, execution and officer's return, in the suit of Brown against McPhail, were then admitted in evidence against the objection of the plaintiff. So much of those papers and records as is material to the decision of this case, appear in the opinion of the court.

The sixth instruction given by the court to the jury, to which the plaintiff specially excepted, is, that "depositing the money as indemnity in order to run the lumber to market is no waiver of the defendant's right under the execution levy." The jury found that the defendant was entitled to the possession of the property; and was the owner of a special property therein to the amount of the execution in his hands, with costs and interest, amounting to $1,545.00; and that the plaintiffs unjustly took and detained the same. They assessed defendant's damages at said sum of $1,545.00.

A motion for a new trial was overruled, and judgment entered for the defendant, from which plaintiffs appealed.

*James O. Raymond*, for appellants, contended that the verdict was insufficient, because it did not determine the issues as to the general ownership and value of the property. (*Rose v. Tolley*, 15 Wis., 443; *Wallace v. Hilliard*, 7 id., 627; *Farmer's Loan & Trust Co. v. Commercial Bank*, 15 id., 424; *Ford v. Ford* 3 id., 399); that there was no evidence except the defendant's return on the execution, that this property levied on was the same, or manufactured from the same logs on which Brown had a lien, and on which the execution commanded him to levy, and such return was not proper evidence thereof, (*Hlademan v. Brusfield*, Litt. Sel. Cases, 271; *Barney v. Weeks*, 4 Vt., 146; *Townsend v. Olin*, 5 Wend., 209; Cowen & Hills' Notes, 367); that the plaintiff in that suit could claim a lien only on the identical logs described in his petition for a lien and other papers in the suit, and not on other logs intermingled with them, unless so intermingled with a fraudulent intent; that the affidavit for the attachment was insufficient, (*Lathrop v. Snyder*, 16 Wis., 293; *Whitney v. Brunette*, 15 id., 61); and that the sixth instruction given to the jury was erroneous.

*E. L. Brown* and *W. C. Silverthorn*, for respondent, contend that the verdict is conclusive as to questions of fact (*Persons v. Burdick*, 6 Wis., 63; *Dexter v. Cole*, id., 321; *Harrison v. Doyle*, 11 id., 283; *Edmiston v. Garrison*, 18 id., 594; *Hall v. Augustine*, 23 id., 383); that the bond, the judgment roll and other papers were properly admitted in evidence (*Beard v. Dedolph, ante,* p. 136); that the deposit of the money was merely as additional security, and was not a settlement of the case, or release of the defendants' claim to the lumber; that the verdict was sufficient, the question of general ownership and value being immaterial, since the evidence showed that the plaintiffs had retained the lumber and converted it to their own use, and the only material issue was as to the defendant's special property and its value; that the lumberman's lien cannot be defeated by the willful act of the other party in mingling the property with his own, but the party so causing a confusion of goods,

thereby loses his own; that the affidavit for the attachment was sufficient in both stating the amount of indebtedness and that a petition had been made and filed; and that the appellants were estopped by their bond from denying the identity of the property.

COLE, J. The first objection taken on the brief of the counsel for the plaintiffs is, that the verdict is insufficient, for the reason that it does not dispose of all the material issues. The action was replevin. It was alleged in the complaint that the plaintiffs were the owners and entitled to the possession of the lumber which had been wrongfully and unjustly taken by the defendant. The answer averred that the defendant had levied upon and held the property by virtue of an execution against one Daniel McPhail, and in favor of one John Brown, and traversed the allegations of the complaint. The jury found, in substance, that the defendant was the owner of a special property in the lumber to the amount of the execution in his hands, stating the amount; that he was entitled to the possession of the property; that the plaintiffs had unjustly taken and detained it; and assessing the defendants damages for such unjust taking and detention. It is objected that the verdict is silent as to the general ownership and value of the property. It appears to us that the verdict was sufficient upon the facts disclosed on the trial. The plaintiffs retained the possession of the property and run it to market, an arrangement having been entered into between the defendant and Mr. McIndoe on their behalf, by which the sheriff was to release the lumber upon the amount of money due upon the execution being deposited to abide the determination of the question whether the defendant had a special property therein by virtue of the levy. The effect of this arrangement, obviously, was to render all the issues immaterial, except the single one whether the defendant, as sheriff, had a special property in the lumber to the amount of the execution, and was entitled to the possession. The

court charged, among other things, that the plaintiffs were the general owners, and entitled to the possession, unless the defendant had a paramount lien or interest by virtue of the levy. And, therefore, the only real issue between the parties was conceded to be whether the defendant had such special property to the exclusion of the general owners. The verdict fully disposes of that issue.

The origin of the defendant's title to the lumber in controversy was through or by means of an attachment proceeding, wherein John Brown was plaintiff and McPhail was defendant, to satisfy a lumberman's lien for services in cutting and running logs. The sheriff attached logs which were supposed to be put in by McPhail and others, and marked "M. S." sufficient to satisfy this lien. The logs, when seized on the attachment, were in a pond in the Wisconsin river, above the village of Wausau and the mill of McIndoe. A few days after the attachment was served, McIndoe as principal, and the plaintiff *Stewart* as surety, gave the sheriff a bond in the penal sum of $2,000, reciting that a writ of attachment had issued in the action of Brown, plaintiff, and McPhail and McIndoe, defendants, on which writ the sheriff had seized and held possession of a certain number of white pine saw logs bearing the mark " M. S.." estimated, etc., and further reciting that the logs were located in the booms at the village of Wausau, and that the same must be put through the mills there in order to hold the same. The condition of the bond was, that, if McIndoe should saw these logs at his mill without charge to the sheriff or the plaintiff in the attachment suit, claiming no lien on the logs for such sawing, and should pile all the lumber manufactured from the logs and deliver the same to the sheriff, " it being understood that the same shall not in fact go out of the control of the said *Joseph Barnard*, sheriff as aforesaid, and to be at all times subject to the order and control, custody and possession of the said *Joseph Barnard*, sheriff as aforesaid, or his successor in office, *as the court may order in said action, and be subject to the order of the*

*court in said action at all times,*" then the obligation to be void. The circuit court afterwards, in the action of Brown v. McPhail, adjudged and determined that the plaintiff in that suit had a valid lien upon the logs seized and levied upon by the sheriff on the attachment against McPhail, and ordered that the sheriff proceed and sell the property to satisfy this lien and judgment. In the meantime the logs, or the most of them, had been manufactured into lumber by McIndoe, according to the agreement in the bond. The claim of the defendant is, that the lumber in question was manufactured from the logs upon which the court had decided that a laborer's lien existed in favor of John Brown.

But it is now insisted on the part of the plaintiffs, that there is no evidence in this case that Brown was entitled to a lien upon the logs seized by the sheriff on the attachment, and that they are in no way bound by the judgment which was rendered in that case, adjudging a lien upon them. We think, however, the plaintiffs are not in a position to go into that inquiry, for this reason. The plaintiff *Stewart* united with McIndoe in the execution of the bond above referred to, in which it is stipulated and agreed that the logs seized upon the writ of attachment should be subject to the order of the court in that action. And, as the circuit court remarked in its charge to the jury in this case, *Stewart* and McIndoe, by the execution of that bond, assumed the position of receiptors of that property, engaging to treat the same in a certain manner, and were bound to return it to the defendant. The circuit court, in the attachment suit, ordered it to be sold to satisfy the lien. McIndoe and *Stewart* had obligated themselves to have and hold the property subject to this order. In the face of this undertaking, the plaintiffs cannot say that they are in no way bound by the order and proceeding in the lien suit. For they are partners, and the engagement of *Stewart* is binding upon the firm in this matter. And *Stewart* is certainly now concluded from going into the question whether the logs seized upon the attachment were the

identical ones upon which the labor and services were performed by Brown.

But again, it is said there is no evidence to identify the lumber in dispute as being that which was manufactured from the logs attached.    This objection must receive very much the same answer as the last one.    McIndoe, by his bond, agreed to pile all the lumber manufactured from those logs so that it could be identified, and be subject at all times to the control of the sheriff and order of the court.    It is his wrong if the lumber has become mixed with other lumber so that it cannot be identified, and the plaintiffs cannot take advantage of McIndoe's failure to pile the lumber separately according to his agreement.

It is further objected that the court improperly admitted in evidence the judgment roll in the case of *Brown v. McPhail*, because there was no sufficient affidavit made to authorize the issuing of a writ of attachment.    This objection is untenable. The affidavit states the indebtedness with definiteness and particularity, and shows that such indebtedness was for labor and services done and performed upon the logs therein described. It likewise states that a petition in writing, claiming a lien upon the logs, had " been made and filed " by the plaintiff.

The last objection taken is to the sixth instruction given by the court.    The idea intended to be conveyed by that instruction seems to be this: that the defendant, by accepting a deposit of money sufficient to satisfy the execution, and releasing the lumber in order that the plaintiffs might run it market, did not thereby waive his right under the levy.    It is plain that the object in making the deposit, was to apply the money deposited in satisfaction of the execution, providing it was determined that the sheriff had a special property in the lumber. The deposit could have been made for no other purpose.

We think the judgment of the circuit court is correct, and must be affirmed.

*By the Court.*—Judgment affirmed.